1  VENABLE LLP
   Celeste M. Brecht (SBN 238604)
2  Email:   cmbrecht@venable.com
   2049 Century Park East, Suite 2100
3  Los Angeles, CA  90067
   Telephone:  (310) 229-9900
4  Facsimile:   (310) 229-9901

5  Attorneys for
   CREATIVE NAIL DESIGN, INC.
6

FILED
CLERK, U.S. DISTRICT COURT

NOV 1 9 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

COURTESY
COPIES

7              UNITED STATES DISTRICT COURT
8              CENTRAL DISTRICT OF CALIFORNIA
9                    WESTERN DIVISION

10  IN RE SUBPOENA TO NON-PARTY          Case No. CV13-8534 R (FFMx)
11  OPI PRODUCTS, INC.
                                         (Case No. 3:12-CV-00747-RS
12                                       pending in N.D. Cal.)

13  MYCONE DENTAL SUPPLY CO., INC.,      **CREATIVE NAIL DESIGN,
14  d/b/a KEYSTONE RESEARCH              INC.'S NOTICE OF MOTION
    PHARMACEUTICAL,                      AND MOTION TO SEAL RE
15                                       MOTION TO COMPEL
16              Plaintiffs,              DOCUMENTS FROM OPI
                                         PRODUCTS, INC.;
17        vs.                            MEMORANDUM OF POINTS
18                                       AND AUTHORITIES AND
    CREATIVE NAIL DESIGN, INC.,          LOCAL RULE 37-1 JOINT
19                                       STIPULATION IN SUPPORT
              Defendant.                 THEREOF**
20

21                                       [Declaration of Celeste M. Brecht in
22                                       Support and [Proposed] Order filed
                                         concurrently herewith]
23

24  Date:    TBD  January 6, 2014
    Time:    TBD  10:00am
25  Ctrm:    TBD  8
    Judge:   TBD  Real
26

27

28

7363209-v1                               NTC OF MTN AND MTN TO COMPEL PRODUCTION
                                         OF DOCUMENTS FROM OPI PRODUCTS

11/19/13

**TO THE CLERK OF THE COURT, OPI PRODUCTS, INC., AND ITS COUNSEL OF RECORD AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on _____, 2013, or as soon thereafter as the matter may be heard by the above-entitled Court, located at 312 N. Spring Street, Los Angeles, California 90012, in the courtroom of the judicial officer to whom the Court may refer this matter, Defendant Creative Nail Design Inc. ("CND") will and herby does move for an Order compelling the production of documents from OPI Products, Inc.

This motion is brought on the grounds that on July 19, 2013, CND served a document subpoena on OPI Products, Inc., but OPI Products, Inc. refuses to comply with that subpoena. OPI Products, Inc.'s conduct has forced CND to seek an order from this Court to enforce the subpoena. Non-party OPI opposes this motion as it seeks production of highly sensitive, competitive, confidential business and financial trade secrets to a direct competitor when that information is neither necessary for, nor relevant to, the litigation underlying CND's subpoena.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, in support thereof, the Declaration of Celeste M. Brecht and the exhibits thereto, the Declarations of Declarations of Robert F. McCauley and William Halfacre in Opposition, the Joint Stipulation of the interested parties and the (Proposed) Order granting this Motion, all of the pleadings and records on file in this action and the previous action related hereto (including the underlying action pending the Northern District of California), any oral argument before the Court, and any other matters the Court may request or consider. A proposed order is lodged herewith.

Dated: November 18, 2013                    VENABLE LLP

By: /s/ Celeste M. Brecht
Celeste M. Brecht
Attorneys for Creative Nail
Design Inc.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

i

# TABLE OF CONTENTS

JOINT STIPULATION .................................................................................................. 1

I.      INTRODUCTORY STATEMENTS ........................................................... 1

      A.     CND's Introductory Statement ........................................................ 1

      B.     OPI's Introductory Statement ......................................................... 1

II.     ISSUE IN DISPUTE ................................................................................... 2

      A.     CND's STATEMENT OF THE ISSUES IN DISPUTE ................... 2

      B.     OPI's STATEMENT OF THE ISSUES IN DISPUTE .................... 2

CND'S CONTENTIONS ............................................................................................... 3

      A.     STATEMENT OF FACTS ............................................................ 3

           1.     The Underlying Litigation .................................................. 3

           2.     CND's Subpoena to OPI ..................................................... 4

           3.     The Requests at Issue ......................................................... 5

           4.     The Parties Met and Conferred Regarding the Subpoena and the Substance Of This Motion Pursuant to FRCP Rule 37(a)(1), Local Rule 37-1, and This Court's Standing Order ............ 6

      B.     ARGUMENT ................................................................................ 6

           1.     The Information Sought in the Subpoena is Relevant to the Underlying Litigation ...................................................... 8

           2.     CND's Subpoena Does Not Subject OPI to any Undue Burden or Expense .............................................................. 11

           3.     OPI's Objection on the Grounds of Confidentiality is Improper and Unwarranted in Light of the Protective Order in the Underlying Case .............................................................. 11

      C.     CONCLUSION .......................................................................... 12

OPI'S CONTENTIONS ................................................................................................ 13

      A.     Statement of Facts ...................................................................... 13

           1.     OPI Agreed to a Substantial Production .............................. 14

           2.     The Dispute Concerning Document Request No. 11 ............ 15

      B.     Argument ................................................................................... 20

           1.     Non-Party OPI Should Not Be Compelled To Produce Highly Sensitive Trade Secrets To a Direct Competitor in Response to Request No. 11 Because There Is No Relevance or Need ....... 22

           2.     CND Has Not Addressed OPI's Valid Concerns Regarding the Protective Order .......................................................... 31

      C.     Conclusion ................................................................................. 34

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

ii

7364291-v1

NTC OF MTN AND MTN TO COMPEL PRODUCTION
OF DOCUMENTS FROM OPI PRODUCTS, INC.

# TABLE OF CONTENTS

Page

**Cases**

*Aevoe Corp. v. AE Tech Co., Ltd.,*
2:12-CV-00053-GMN, 2013 WL 5954570 at *2 (D. Nev. Nov. 6, 2013) ..............21, 22

*Am. Standard Inc. v. Pfizer Inc.,*
828 F.2d 734 (Fed. Cir. 1987)..................................................................................24

*Anderson v. Hale,*
202 F.R.D. 548, 2001 WL 503045, at *3 (N.D. Ill. 2001)..................................7

*Apple Inc. v Samsung Electronics Co. Ltd. et al,*
Case No. 5:11-cv-01846 LHK (PSG) ....................................................................33

*Automatic Radio Manuf. Co. v. Hazeltine Research, Inc.,*
339 U.S. 827 (1950)...............................................................................................29

*Carnegie Mellon Univ. v. Marvell Tech. Group Ltd.,*
2013 WL 5332108, at *49 (W.D. Pa. Sep. 23, 2013) .........................................29

*Collins and Aikman Corp. v. J.P. Stevens & Co., Inc.,*
51 F.R.D 219 (D. S.C. 1971) ................................................................................21

*Dart Indus. Co. v. Westwood Chem. Co.,*
649 F.2d 646 (9th Cir.1980) .................................................................................21

*Del Campo v. Kennedy,*
236 F.R.D. 454 (N.D. Cal. 2006).....................................................................6, 21

*Engel Indus., Inc. v. Lockformer Co.,*
96 F.3d 1398 (Fed. Cir. 1996).............................................................................29

*Exxon Shipping Co. v. U.S. Dept. of Interior,*
34 F.3d 774 (9th Cir.1994) ....................................................................................6

*Fujifilm Corp. v. Benun,*
605 F.3d 1366 (Fed. Cir. 2010), *cert. denied,* 131 S. Ct. 829 (2010) ............29

*Georgia-Pacific v. United States Plywood Corp.,*
318 F. Supp. 1116 (S.D.N.Y 1970)................................................... passim

*Heat & Control, Inc. v. Hester Industries, Inc.,*
785 F.2d 1017 (Fed. Cir.1986)..............................................................................6

*Hickman v. Taylor,*
329 U.S. 495, 67 S. Ct. 385 (1947)......................................................................20

*In re Yassai,*
225 B.R. 478 (Bankr. C.D. Cal.1998).....................................................................7

*Katz v. Batavia Marine & Sporting Supplies, Inc.,*
984 F.2d 422 (Fed. Cir. 1993)..............................................................................21

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

i

*Lucent Techs., Inc. v. Gateway, Inc.,*
   580 F.3d 1301 (Fed. Cir. 2009)................................................................30

*Mailhoit v. Home Depot U.S.A., Inc.,*
   285 F.R.D. 566 (C.D. Cal. 2012) ...............................................................7

*Mannington Mills, Inc. v. Armstrong World Industries, Inc.,*
   206 F.R.D. 525 (D. Del. 2002) ................................................................30

*Mattel, Inc. v. Walking Mountain Prods.,*
   353 F.3d 792 (9th Cir. 2003) ...................................................................22

*Micro Motion, Inc. v. Kane Steel Co.,*
   894 F.2d 1318 (Fed.Cir.1990)......................................................... passim

*Panduit Corp. v. Stahlin Bros. Fibre Works,*
   575 F.2d 1152 (6th Cir. 1978) ...............................................8, 10, 27, 28

*Radio Steel & Mfg. Co. v. MTD Prods., Inc.,*
   788 F.2d 1554 (Fed. Cir. 1986)................................................................28

*Ramirez v. Nicholson,*
   CV 06-0546-JM (NLS), 2007 WL 2990283, at *2 (S.D. Cal. Oct.11, 2007)..................7

*Schaap v. Executive Indus., Inc.,*
   130 F.R.D. 384 (N.D. Ill. 1990) ................................................................7

*Syposs v. United States,*
   181 F.R.D. 224 (W.D.N.Y. 1998)...............................................................6

*Truswal Systems Corp. v. Hydro–Air Engineering, Inc.,*
   813 F.2d 1207, 1211–12 (Fed. Cir. 1987) ...............................................7

*White v. Kenneth Warren & Son, Ltd.,*
   203 F.R.D. 364 (N.D. Ill. 2001)................................................................7

*WPIX, Inc. v. Broad. Music, Inc.,*
   CV 11-4052-SJO JEMX, 2011 WL 9753912 (C.D. Cal. July 5, 2011)........................7

**Statutes**

35 U.S.C. § 284...........................................................................................8

Civil Local Rule 37.........................................................................6, 18, 23

Civil Local Rule 79.....................................................................................33

Federal Rules of Civil Procedure Rule 26 ........................................... passim

Federal Rules of Civil Procedure Rule 34 ..............................................6

Federal Rules of Civil Procedure Rule 37 ..............................................1

Federal Rules of Civil Procedure Rule 45 .........................................1, 4, 6, 21

N.D. Cal. C. R. 37........................................................................................1

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

ii

## Other Authorities

9 Moore's Federal Practice, § 45.03[1] (Matthew Bender 3d ed.) ...................................................6

General Order 62...............................................................................................................33

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7364291-v1

NTC OF MTN AND MTN TO COMPEL PRODUCTION
OF DOCUMENTS FROM OPI PRODUCTS, INC.

# JOINT STIPULATION

## I.    INTRODUCTORY STATEMENTS

### A.    CND's Introductory Statement

This dispute relates to patent infringement litigation between companies that design, manufacture and distribute a specific type of nail polish.  The primary litigation is currently pending in the Northern District of California.  This motion arises out of third-party OPI Products, Inc.'s ("OPI") failure to comply with a federal subpoena issued from the Central District of California and served by Creative Nail Design, Inc. ("CND") requiring OPI to produce certain documents and provide testimony.  Despite the demonstrated efforts and willingness by counsel for CND to greatly narrow the issues in dispute and informally resolve this discovery dispute, OPI refuse to produce certain key documents responsive to the subpoena.  CND respectfully requests this Court to order that OPI comply with the subpoena and provide the requested documents.[1]  This motion is made pursuant to Fed. R. Civ. P. 37 and 45.  The fact discovery deadline in the underlying litigation is currently set for November 22, 2013.[2]  Pursuant to N.D. Cal. C. R. 37-3, a motion to compel fact discovery may be filed up to 7 days after the fact discovery cut-off.

### B.    OPI's Introductory Statement

The July 19, 2013 subpoena for the production of documents served by Creative Nail Design, Inc. ("CND") on OPI Products, Inc. ("OPI") ("Subpoena") overreaches the limits of appropriate discovery.

The patent infringement litigation underlying the Subpoena is between CND

---

[1]  The parties are still in the process of negotiating the scope of several deposition topics set forth in CND's subpoena to OPI.  However, the Court's determination as to the subject of the instant motion will provide guidance to the parties on those issues.  In the event that the parties are unable to agree on the scope of the deposition topics, both parties reserve all rights to seek judicial assistance in resolving any dispute.

[2]  A copy of the Court's scheduling order (and any amendments thereto) are attached as Exhibits A-H, V to the Declaration of Celeste M. Brecht.

1

1  and Mycone Dental Supply Co., Inc. d/b/a Keystone Research & Pharmaceutical

2  ("Keystone") in the Northern District of California.  OPI, which has a principal

3  place of business in North Hollywood, California, is not a party to that litigation.

4      CND's subpoena of OPI was overzealous from the outset and, with respect

5  to the remaining disputed document request, continues to be so.

6      OPI and CND are direct competitors.  Nevertheless, non-party OPI has been

7  cooperative and accommodating to CND in responding to its subpoena.  In

8  response to OPI's objections, CND eventually withdrew many of its document

9  requests, and OPI and CND agreed to a narrower scope of production for all of the

10  remaining document requests except for Request No. 11 at issue here.  Although

11  CND has somewhat narrowed its original Request No. 11, CND continues to

12  inappropriately pursue this document request which seeks confidential, highly

13  sensitive, competitive business and financial trade secret information that is *inter*

14  *alia*, irrelevant to any claim or defense in the underlying litigation between CND

15  and Keystone, and not reasonably calculated to lead to the discovery of admissible

16  evidence.  OPI respectfully requests the Court to deny CND's motion to compel

17  the production of documents in response to disputed document Request No. 11 of

18  the Subpoena.

19

20      **II.    ISSUE IN DISPUTE**

21      **A.    CND's STATEMENT OF THE ISSUES IN DISPUTE**

22      CND and OPI have agreed as to the scope of most of the subpoena.  The

23  issue in dispute is whether the Court will compel OPI to produce documents in

24  response to Request No. 11 in CND's subpoena, as narrowed by CND in

25  correspondence between CND and OPI.

26      **B.    OPI's STATEMENT OF THE ISSUES IN DISPUTE**

27      CND and OPI have agreed on a narrowed scope for all but one of the

28  Requests for Documents in the Subpoena.  The remaining issue in dispute for this

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

2

1  motion is:

2      With respect to CND's revised document Request No 11, should non-party

3  OPI be required to produce highly sensitive, competitive, confidential business and

4  financial trade secrets to a direct competitor when that information is neither

5  necessary for, nor relevant to, the litigation underlying the Subpoena?

6

7               **CND'S CONTENTIONS**

8    **A.    STATEMENT OF FACTS**

9        **1.    The Underlying Litigation**

10      Plaintiff/Counter-Defendant Mycone Dental Supply Co., Inc. d/b/a Keystone

11  Research & Pharmaceutical ("Keystone") filed a declaratory judgment action

12  against CND on February 15, 2012 in the Northern District of California, Case No.

13  3:12-cv-00747-RS, seeking, *inter alia*, a declaratory judgment of non-infringement

14  and invalidity of claims 13 and 14 of United States Patent No. 6,803,394 ("the '394

15  patent") on behalf of "its customers." *See* Complaint (Dkt. 1) at ¶¶ 1, 33, attached

16  to Brecht Decl. as Ex. I.  As a basis for its declaratory judgment complaint,

17  Keystone explained that it sells UV-curable nail polish, like its "Gel Polish," in

18  bulk to its customer cosmetic companies, which either repackage the "finished

19  product" from Keystone for sale or make some modifications before offering their

20  own products for sale to distributors and retail outlets. *See id.* at ¶ 4.  In its

21  Complaint, Keystone alleged to have numerous customers of its Gel Polish

22  products, but only specifically identified Cacee, Inc. ("Cacee"), Nail Systems

23  International ("NSI"), and Young Nails, Inc. ("Young Nails"), each of which has

24  produced in discovery information comparable to (indeed, broader than) that now

25  sought from OPI by way of subpoena.. *See id.* at ¶¶ 17-34.  Because Keystone did

26  not identify OPI, one of Keystone's largest customers, as a customer of its Gel

27  Polish products in its declaratory judgment action, OPI was not directly included in

28  the underlying litigation.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

3

NTC OF MTN AND MTN TO COMPEL PRODUCTION
OF DOCUMENTS FROM OPI GEL PRODUCTS, INC.

On March 13, 2012, CND filed its counterclaims, alleging that Keystone, and Cacee, NSI, and Young Nails, the only three Keystone customers specifically identified in Keystone's Complaint, directly and/or indirectly infringe claims 13 and 14 of the '394 patent. Claims 13 and 14 of the '394 patent are directed to particular methods of applying a UV-curable nail polish to a person's fingernails. Thus, direct infringement occurs when the product is applied to a person's fingernails and Keystone is typically an indirect infringer in that situation. The actions of Keystone's customers, as a link in the supply chain, are relevant to the indirect infringement analysis. Only through the discovery process did CND learn that OPI is another one of Keystone's customers for its Gel Polish products, indeed one of its largest, thus prompting CND to serve the subpoena at issue in the present dispute.

## 2.    CND's Subpoena to OPI

Pursuant to Fed. R. Civ. P. 45(a)(2)(B) and 45(a)(2)(C), a valid subpoena issued in this judicial district on July 19, 2013 (the "Subpoena") seeking the production of documents and testimony related to the Gel Polish products purchased by OPI from Keystone, as well as the OPI products sold which incorporate Keystone's Gel Polish. *See* Celeste M. Brecht Declaration, Ex. J. The Subpoena commanded the production of documents by August 8, 2013. *Id.* at 1. The Subpoena also commanded appearance for a deposition on August 15, 2013. OPI served objections to the subpoena on August 2, 2013. *See* Celeste M. Brecht Declaration, Ex. K. In an attempt to avoid the necessity of filing the present motion, CND in good faith conferred with OPI's counsel to resolve the discovery issues by telephone and by written correspondence. Although CND's original subpoena was entirely proper, CND voluntarily withdrew its requests for legitimate discovery in order to narrow the dispute between the parties. In a further effort to obviate the need for the present motion, CND offered to limit the scope of the documents requested in the Subpoena. *See* Celeste M. Brecht Declaration, Ex. L.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

4

NTC OF MTN AND MTN TO COMPEL PRODUCTION
OF DOCUMENTS FROM OPI GEL PRODUCTS, INC.

1    Subsequently, counsel for the parties exchanged six letters, and in each exchange

2    CND offered to further narrow the scope of the document requests in the Subpoena

3    well beyond that required by the Federal Rules of Civil Procedure.  *See* Celeste M.

4    Brecht Declaration, Exs. M-R.  On October 28, 2013, counsel for the parties

5    conducted another meet and confer conference.  At the conclusion of this

6    conference it was established that the parties had reached agreement on most

7    issues.  However, a dispute remains as to Document Request No. 11 in the

8    Subpoena.  Despite the fact that CND has significantly narrowed the scope of these

9    requests, OPI maintains its refusal to produce documents responsive to these

10   requests.  *See* Celeste M. Brecht Declaration, Ex. S.

11        Thus, despite CND's efforts to meet and confer in good faith and offer a

12   reasonable compromise to obtain OPI's voluntary compliance with the subpoena,

13   OPI refuses to comply as of the time of filing of the present motion.

14                  **3.     The Requests at Issue**

15        As explained above, CND has significantly narrowed the scope of its

16   requests in an attempt to resolve the resulting discovery dispute.  Below is CND's

17   narrowed request and OPI's responses to those requests.

18        **CND's Request No. 11:**  Documents sufficient to show OPI's U.S. Sales to

19   each of its U.S. customers (including distributors, wholesalers and retailers) of any

20   OPI products that incorporate or contain the Keystone Products purchased by OPI,

21   specifically identified by name and item number in the definition of "Keystone

22   Products" from 2010 to present, including unit and dollar sales and cost of goods

23   sold.

24        **OPI's Current Position on Request No. 11:**  We remain in disagreement

25   regarding this request.  We understand that CND is seeking documents sufficient to

26   show OPI's U.S. sales to each of its U.S. customers (including distributors,

27   wholesalers and retailers) of any OPI products that incorporate or contain the

28   "Keystone Products" (as limited above) from 2010 to present, including unit and

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

5

dollar sales and cost of goods sold.  While CND has repeatedly broadly asserted, and we have disagreed, that this highly confidential information is relevant to both lost profits and reasonable royalty analyses, we have not received sufficient explanation as to why or how the requested information is relevant to or necessary for the underlying litigation and continue to maintain all of our objections to this request.

> **4.  The Parties Met and Conferred Regarding the Subpoena and the Substance Of This Motion Pursuant to FRCP Rule 37(a)(1), Local Rule 37-1, and This Court's Standing Order**

Calvin Nelson (counsel for CND) and Linda Wadler (counsel for OPI) have conferred in good faith to eliminate the necessity for hearing the motion and to eliminate as many of the disputes as possible.  The most recent conference took place telephonically on October 28, 2013.  Despite the parties' efforts to informally resolve their dispute, their efforts were unsuccessful.

## B.  ARGUMENT

The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules.  *See Del Campo v. Kennedy*, 236 F.R.D. 454, 457 (N.D. Cal. 2006) ("The Advisory Committee Notes to the 1970 Amendments to Rule 45 state that the "scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules." ).  Rule 26(b)(1) governs the scope of documents the production of which can be requested for discovery purposes under Rule 45. *See, e.g.,* 9 Moore's Federal Practice, § 45.03[1] (Matthew Bender 3d ed.); *see also, Heat & Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017 (Fed. Cir.1986) ("Rule 45(b)(1) must be read in light of Rule 26(b)") and *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 779 (9th Cir.1994) (applying both Rule 26 and Rule 45 standards to rule on a motion to quash subpoena); *Syposs v. United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998).  Thus, discovery of OPI's documents are allowable under Fed. R. Civ. P. 26, which

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

NTC OF MTN AND MTN TO COMPEL PRODUCTION
OF DOCUMENTS FROM OPI GEL PRODUCTS, INC.

1   enables a party to "obtain discovery regarding any matter, not privileged, that is

2   relevant to the claim or defense of any party, including the existence, description,

3   nature, custody, condition, and location of any books, documents, or other tangible

4   things . . . ."

5       Relevancy under Rule 26 is construed broadly to encompass "any matter that

6   bears on, or that reasonably could lead to other matter[s] that could bear on, any

7   issue that is or may be in the case." *Mailhoit v. Home Depot U.S.A., Inc.,* 285

8   F.R.D. 566, 570 (C.D. Cal. 2012). "Liberal discovery is permitted in federal courts

9   to encourage full disclosure before trial." *White v. Kenneth Warren & Son, Ltd.,*

10  203 F.R.D. 364, 366 (N.D. Ill. 2001). "The minimal showings of relevance and

11  admissibility hardly pose much of an obstacle for an inquiring party to overcome."

12  *Anderson v. Hale,* 202 F.R.D. 548, 2001 WL 503045, at *3 (N.D. Ill. 2001).

13      A party opposing discovery has the burden of showing that the discovery

14  should not be allowed.  *Ramirez v. Nicholson,* CV 06-0546-JM (NLS), 2007 WL

15  2990283, at *2 (S.D. Cal. Oct.11, 2007); *see also In re Yassai,* 225 B.R. 478, 483–

16  84 (Bankr. C.D. Cal.1998) (party asserting discovery request is unduly

17  burdensome bears heavy burden of proof).  To meet this burden, the objecting

18  party must "specifically detail the reasons why each [request] is irrelevant. . . ."

19  *Schaap v. Executive Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990).

20      Here, OPI cannot meet this burden.  *See WPIX, Inc. v. Broad. Music, Inc.*,

21  CV 11-4052-SJO JEMX, 2011 WL 9753912 (C.D. Cal. July 5, 2011) ("A district

22  court whose only connection with a case is supervision of discovery ancillary to an

23  action in another district should be 'especially hesitant to pass judgment on what

24  constitutes relevant evidence thereunder.' Where relevance is in doubt ... the court

25  should be permissive.") (citing *Truswal Systems Corp. v. Hydro–Air Engineering,*

26  *Inc.*, 813 F.2d 1207, 1211–12 (Fed. Cir. 1987)).  OPI has failed to detail how

27  CND's requests are either irrelevant or unduly burdensome, and should therefore

28  be compelled to comply with the Subpoena and provide the requested documents.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

7

1.    **The Information Sought in the Subpoena is Relevant to the Underlying Litigation**

The documents requested in the subpoena pertain directly to issues relevant to CND's proof of its case.  The requested documents are highly relevant to the calculation of CND's damages due to Keystone's infringement of the patent-in-suit.  *See Georgia-Pacific v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y 1970) (setting forth factors to be considered in a reasonable royalty analysis of patent damages); *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978) (setting forth factors to be considered in a lost profits analysis of patent damages).

In Request No. 11, CND is seeking "[d]ocuments sufficient to show OPI's sales to each U.S. customer, including distributors, wholesalers and retailers, of any OPI products that incorporate the Keystone Products purchased by OPI, including units and dollar sales, and cost of goods sold.  This information is relevant to *Georgia-Pacific* factor number 8, which requires an examination of the established profitability of the products made under the patent, its commercial success[3] and its current popularity.  Documents responsive to Request No. 11 relate to OPI's sales to its customers of products which incorporate the accused Keystone Products in the underlying litigation. Such documents are directly relevant to CND's damages case because the information is relevant to a calculation of lost profits damages and/or the calculation of a reasonable royalty.  Therefore, the documents sought in Request No. 11 are highly probative of the appropriate amount of damages "adequate to compensate" CND for Keystone's infringement, as required by the Patent Statute.  *See* 35 U.S.C. § 284.  Information concerning OPI's sales is solely in the possession of OPI and cannot be obtained from

---

[3] Commercial success is also relevant as it is one of the most commonly used of the secondary-considerations of nonobviousness.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

8

1  Keystone.

2       As explained above, claims 13 and 14 of the '394 patent relate to a method

3  of applying UV-curable nail polish to a person's fingernails.  In order for an

4  infringing use to occur, the method must be performed in the United States.

5  Therefore, to calculate Keystone's infringing sales, CND seeks to determine

6  Keystone's sales to its customers (i.e. OPI), as well as the U.S. sales of Keystone's

7  customers thereafter and down the supply chain.  CND can then determine with

8  reasonable certainty the extent to which the infringing method is performed in the

9  United States.   This information is relevant to *Georgia-Pacific* factor number 11 –

10  the extent to which the infringer has made use of the invention and the value of

11  such use.  OPI's U.S. sales information is relevant for determining to what extent

12  Keystone's sales to OPI remain in the United States.  The proportion of OPI's sales

13  that remain in the United States would have also affected the reasonable royalty

14  that Keystone would have been willing to pay CND at the time of the hypothetical

15  negotiation under a *Georgia-Pacific* reasonable royalty analysis. *See Georgia-*

16  *Pacific*, 318 F. Supp. at 1120.

17       OPI's sales information is also relevant because of OPI's and CND's relative

18  positions in the supply chain for nail polish.  CND does not directly compete with

19  Keystone in the marketplace. Keystone is a bulk manufacturer that sells products to

20  its customers who then sell their own branded products to distributors before the

21  products finally make their way to nail salons or retail outlets.  CND competes

22  directly with Keystone's customers, including OPI, as both of these companies sell

23  their branded products to distributors, and in some cases the same distributor.  The

24  fact that CND and OPI directly compete for these distributor sales means that

25  OPI's sales information is highly relevant for a calculation of a reasonable royalty

26  and lost profits.  Moreover, information regarding OPI's customers is relevant to

27  establish that CND and OPI compete in the same marketplace for the same

28  customers.  Specifically, OPI is a major branded nail polish manufacturer and the

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

9

1    extent of its sales  is relevant to a reasonable royalty analysis with respect to

2    *Georgia-Pacific* factor number 5 –the commercial relationship between the

3    licensor and the licensee.  Keystone's infringing sales to OPI enables OPI to sell its

4    branded gel polish products and provide substantial direct competition for CND.

5    In terms of a *Panduit* lost profits analysis, OPI's sales of its products that

6    incorporate Keystone's infringing products are highly probative evidence of the

7    demand for the patented product, as well as the absence of acceptable

8    noninfringing substitutes.  *See Panduit Corp., 575 F.2d at 1156.*

9         OPI relies upon *Micro Motion, Inc. v.Kane Steel Co.,* 894 F.2d 1318

10   (Fed.Cir.1990), in which the Federal Circuit questioned the relevancy of discovery

11   requests that facially may appear similar, but which are readily distinguishable

12   from the instant case.  In *Micro Motion*, the issue of patent infringement had

13   already been tried once, and damages discovery had been completed.  *Id.* at 1323.

14   Based on the expectation that the defendant would present evidence of sales by

15   others to rebut a lost profits theory, the plaintiff served several subpoenas on non-

16   party competitors in the hopes that the non-party products either infringed the

17   asserted patents or were unacceptable substitutes.  *Id.*   Finding that plaintiff's

18   requested discovery would lead to "an absolute quagmire of proofs concerning a

19   dozen or so other products that are related to the main suit only with respect to

20   damages," the court concluded that the discovery was not warranted. *Id.* at 1324 .

21        Here, by contrast, OPI's sales of its products bear directly upon a calculation

22   of damages in the underlying litigation.  Unlike the non-parties in *Micro Motion*,

23   OPI is not "wholly uninvolved" as OPI purchases the products at issue directly

24   from Keystone.   Indeed, the products at issue here are not merely competing

25   products, rather they *are the very same infringing products* sold by Keystone as

26   they work their way through the distribution channel to the end users where the

27   direct infringement occurs.  Thus, the products at issue are relevant to both

28   infringement and damages in the underling suit.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

10

1    Finally, as discussed above, each of Keystone's customers currently

2    involved in the underlying litigation has produced in discovery information

3    comparable to the information sought from OPI here. In its declaratory judgment

4    action purportedly bought on behalf of "its customers," Keystone chose to identify

5    three of its more modest customers. The fact that Keystone chose to shield its key

6    customers from litigation, should not allow OPI to avoid the legitimate discovery

7    sought here.

8    ### 2.    CND's Subpoena Does Not Subject OPI to any Undue
              Burden or Expense
9

10   OPI's compliance with the Subpoena does not pose an undue burden or

11   expense. CND's Subpoena requests documents that are typically created and

12   retained in the ordinary course of business. OPI cannot credibly argue that

13   locating its sales information for its products that incorporate Keystone's accused

14   products (Request No. 11) is in any way unduly burdensome. Accordingly, OPI

15   need only search and retrieve business records that it has in its possession, custody,

16   or control in order to comply with CND's subpoena.

17   ### 3.    OPI's Objection on the Grounds of Confidentiality is
              Improper and Unwarranted in Light of the Protective Order in
18            the Underlying Case
19

20   In addition to a litany of generic, boilerplate objections advanced by OPI,

21   OPI has also objected to the Subpoena because it requests the production of

22   "highly sensitive, proprietary, and competitive information." *See* Celeste M.

23   Brecht Declaration, Ex. K, at 25.

24   First, OPI's reliance on the purported proprietary or competitive nature of

25   the information requested as a basis to withhold the requested documents is

26   groundless. Pursuant to Fed. R. Civ. P. 26, CND is entitled to obtain discovery

27   regarding any <u>nonprivileged</u> mater that is relevant to CND's claims or defenses.

28   OPI has not asserted privilege for any of the documents sought in Request No. 11.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

11

1    Thus, OPI's refusal to produce documents in response to this request lacks any

2    merit.

3    OPI's argument on this point is further undermined by the fact that a

4    protective order has been entered in the underlying litigation to address this very

5    issue. *See* Celeste M. Brecht Declaration, Ex. T.  The protective order provides

6    that materials produced by third parties, such as OPI, may be designated as

7    "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" to

8    ensure that the document or the contents of the documents would not be shared

9    with the parties in the litigation.  Moreover, the protective order has recently been

10   amended to further address the confidentiality of information produced in the

11   litigation.  Specifically, the amended protective order would allow OPI to

12   designate the following information as "HIGHLY CONFIDENTIAL – OUTSIDE

13   ATTORNEYS' EYES ONLY":

14             extremely sensitive "Confidential" Information or Items
15             pertaining to (a) technical materials, methods, or
               processes that are or could be used by a producing party
16             to manufacture its products, the disclosure of which to
               another Party or Non-Party would create a substantial
17             risk of serious harm that could not be avoided by less
               restrictive means or (b) trade secrets, competitively
18             sensitive technical, marketing, financial, sales or other
19             confidential business information

20   *See* Celeste M. Brecht Declaration, Ex. U. Thus, documents produced by

21   OPI in response to Request No. 11 can only be accessed by outside counsel for

22   CND and Keystone.  Accordingly, the protective order renders moot and

23   unwarranted OPI's objection that the Subpoena seeks confidential information.

24   Therefore, OPI's objection based on the proprietary nature of the requested

25   documents is an improper basis for withholding production.

26   **C.    CONCLUSION**

27   For the foregoing reasons, CND respectfully urges this Court to enter an

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

12

1    appropriate Order compelling OPI to cooperate immediately, and produce the

2    requested documents.

3

4                              **OPI'S CONTENTIONS**

5        **A.    Statement of Facts**

6            The Subpoena from CND to OPI sought the production of documents and

7    testimony related to (a) certain products purchased by OPI from Keystone (a party

8    to the underlying action), and (b) OPI products that incorporate the Keystone

9    products.  The Subpoena contained fifteen document requests and twelve

10   deposition topics.  *See* Brecht Declaration, Ex. J.[4]  OPI served separate objections

11   to the document requests and deposition topics in the subpoena on August 2, 2013.

12   *See* Brecht Declaration, Ex. K.  Subsequently, counsel for the parties exchanged

13   six letters concerning the scope of the requested discovery.  *See* Brecht

14   Declaration, Exs. L-Q.  During a first meet and confer process, CND withdrew six

15   of its document requests, and narrowed the scope of its nine remaining requests. [5]

16   _____

17   [4] In order to avoid duplication of exhibits, OPI uses "Brecht Declaration, Ex._" to

18   refer to the exhibits attached to the Declaration of Celeste M. Brecht In Support Of

     Plaintiff's Motion To Compel.  "McCauley Declaration, Ex. _" refers to exhibits

19   attached to the Declaration of Robert F. McCauley In Support Of OPI's Opposition

20   To Creative Nail Design Inc.'s Motion To Compel With Respect To Production Of

     Documents.

21

22   [5] For example, the Subpoena defined "Keystone Products" as "Keystone's gel nail

     coating products, including, but not limited to, any and all of the following

23   products purchased by OPI [listing nine products]."  Brecht Declaration, Ex. J at p.

     2 of Attachment A.  CND agreed, however, that the term "Keystone Products" as

24   used in its Subpoena is now limited to only the seven products specified in OPI's

25   September 13, 2013 correspondence with CND.  *See* Brecht Declaration, Exs. R

     and S at p. 1. The term "Keystone Products" as used in this paper, therefore, is

26   intended to refer to the agreed-to, narrowed list of products as identified in that

27   correspondence, not the definition of that term as it appears in the Subpoena.

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

7364291-v1                          NTC OF MTN AND MTN TO COMPEL PRODUCTION
                                    OF DOCUMENTS FROM OPI GEL PRODUCTS, INC.

1

### 1.    OPI Agreed to a Substantial Production

As a result of the meet and confer process and as more specifically outlined in correspondence to CND, OPI has agreed to produce:

- Certificates of Analysis and Material Safety Data Sheets as received by OPI from Keystone for any Keystone Products;

- instructions for use and training materials and/or tutorials as received by OPI from Keystone for any Keystone Products purchased by OPI;

- documents sufficient to show summary unit and dollar amounts of Keystone Products purchased by OPI;

- documents concerning any mixing or blending by OPI of any polymerizable acrylate resin, polymerizable methacrylate resin, or polymerizable methacrylate urethane resin with any of the Keystone Products purchased by OPI;

- documents sufficient to show final Material Safety Data Sheets for the "Axxium No Cleanse UV Top Sealer," "Gelcolor By OPI- ALL SHADES," and "Gelcolor By OPI- Top Sealer" products;

- documents sufficient to show final promotional documents that OPI provides to its customers with any products sold by OPI in the U.S. which incorporate or contain the Keystone Products purchased by OPI; and

- documents sufficient to show final publicly disseminated advertising for any products sold by OPI in the U.S. which incorporate or contain the Keystone Products purchased by OPI.

Brecht Declaration, Ex. S.

However, the parties remain in disagreement regarding CND's document Request No. 11.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

14

## 2.   The Dispute Concerning Document Request No. 11

Originally, CND's Document Request No. 11 sought:

> Documents sufficient to show OPI's sales to each U.S. customer, including distributors, wholesalers and retailers, of any OPI products that incorporate the Keystone Products purchased by OPI, including units and dollar sales, cost of goods sold, and gross margin.[6]

Brecht Declaration, Ex. J, p. 8 of Attachment A.  OPI's objections to that request included the following:

> In addition to the General Objections, OPI further objects to this Request to the extent it seeks the identification of OPI's customers, and OPI's "cost of goods sold, and gross margin" as seeking the production of highly sensitive, proprietary and competitive information and as seeking the disclosure of OPI's trade secrets where such disclosure is unduly burdensome, overly broad, irrelevant to any claim or defense in the Litigation, not reasonably calculated to lead to the discovery of admissible evidence, unnecessary to the Litigation, and such disclosure to a competitor would be

---

[6] Although CND contends that is has "narrowed" the discovery it currently seeks with this request, its elimination of the words "and gross margin" has no practical effect as gross margin is calculated by subtracting the cost of goods sold from dollar sales.  CND agreed, however, that the term "Keystone Products" as used in its Subpoena (including in its document Request No. 11) is now limited to only the seven products specified in OPI's September 13, 2013 correspondence with CND. *See* Brecht Declaration, Exs. R and S at p. 1.

extraordinarily injurious to OPI.  OPI also objects to this Request to the extent it seeks documents sufficient to show "OPI's sales . . . including units and dollar sales" as seeking the production of highly sensitive, proprietary and competitive information and as seeking the disclosure of OPI's trade secrets where such disclosure is unduly burdensome, overly broad, irrelevant to any claim or defense in the Litigation, not reasonably calculated to lead to the discovery of admissible evidence, unnecessary to the Litigation, and such disclosure to a competitor would be extraordinarily injurious to OPI.

OPI objects to this Request to the extent it seeks documents concerning "Keystone Products" as overbroad, vague and ambiguous, lacking sufficient particularity, and irrelevant to the extent it seeks to include other Keystone products not specifically identified and listed in the definition, for example by reciting "including, but not limited to."  OPI also objects to this Request to the extent it seeks documents regarding "Keystone Products" that are not relevant to the asserted claims of the '394 patent as overbroad, unduly burdensome, irrelevant to any claims or defenses in the Litigation and not reasonably calculated to lead to the discovery of admissible evidence.  OPI further objects to this Request to the extent it seeks documents concerning "Eo Top Gel (Keystone item no. 4020148)" as irrelevant, overly broad, unduly burdensome and not

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

16

1           reasonably calculated to lead to the discovery of

2           admissible evidence.  OPI further objects to this Request

3           to the extent it seeks documents, materials and

4           information concerning "19001 Axxium Soak-Off Gel

5           Base (Keystone item no. 4020550)" as overly broad,

6           unduly burdensome, irrelevant to any claims or defenses

7           in the Litigation, and not reasonably calculated to lead to

8           the discovery of relevant or admissible evidence.

9   Brecht Declaration, Ex. K at pp. 24-25 of Response and Objection of Non-Party

10  OPI Products, Inc., to Subpoena From Creative Nail Design Inc. for the Production

11  of Documents.

12       Despite OPI's objections and repeated discussions and correspondence

13  between the parties, CND's position with respect to Request No. 11 after the

14  September 4, 2013, telephone conference, was:

15          We remain in disagreement regarding this request. CND

16          has requested documents sufficient to show OPI's U.S.

17          sales to each of its U.S. customers (including distributors,

18          wholesalers and retailers) of any OPI products that

19          incorporate or contain the Keystone Products purchased

20          by OPI specifically identified by name and item number

21          in the definition of "Keystone Products" from 2010 to

22          present, including unit and dollar sales and cost of goods

23          sold.

24  Brecht Declaration, Ex. R, pp. 2-3.

25       Although CND had repeatedly made the conclusory assertion that OPI's

26  U.S. unit and dollar sales to each of its U.S. customers and  cost of goods sold are

27  relevant to a calculation of its asserted damages *from Defendant Keystone* (not

28  OPI, a non-party), OPI disputes CND's assertion.  Since August 2, 2013, CND has

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

17

1   been aware that OPI disputes CND's asserted relevance of Document Request No.

2   11 to the underlying litigation.  Despite OPI's repeated requests for explanation,

3   CND had never provided or explained any basis for its unsupported assertion of

4   relevance.  Brecht Declaration, Ex. P at p. 2 (simply stating, "[w]ith respect to

5   Request No. 11, we maintain our position that OPI's U.S. unit and dollar sales to

6   each of its U.S. customers is relevant to the calculation of damages, including a

7   lost profits damages analysis, in the underlying lawsuit."); Brecht Declaration, Ex.

8   Q at p. 2 ("With respect to Request No. 11, although you have repeatedly stated

9   that OPI's U.S. unit and dollar sales to each of its U.S. customers is relevant to a

10  calculation of damages, you have not provided or explained any basis for that

11  assertion.  Consequently, we continue to maintain our objections to Request No.

12  11.  We, of course, would be willing to consider any further explanation.").  Even

13  during the September 4, 2013 teleconference between the parties, CND's counsel

14  merely repeated a bald assertion of relevancy.  Brecht Declaration, Ex. R at pp. 2-3

15  ("As I indicated during our call, this information is relevant to both a lost profits

16  analysis and a reasonable royalty analysis."); Brecht Declaration, Ex. S at pp. 2-3

17  ("While CND has repeatedly broadly asserted, and we have disagreed, that this

18  highly confidential information is relevant to both lost profits and reasonable

19  royalty analyses, we have not yet received sufficient explanation as to why or how

20  the requested information is necessary for the underlying litigation and continue to

21  maintain all of our objections to this request.").

22      Unable to reach agreement, on September 19, 2013, CND served on OPI its

23  Local Rule 37-1 joint stipulation for CND's motion to compel production in

24  response to document Request Nos. 3 and 11 of its subpoena. McCauley

25  Declaration, Ex. A.  OPI timely served on CND its portion of the joint stipulation

26  opposing CND's motion on October 2, 2013, the agreed-to due date.  McCauley

27  Declaration, Ex. B.  Yet, CND did not proceed with filing the combined joint

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

18

NTC OF MTN AND MTN TO COMPEL PRODUCTION
OF DOCUMENTS FROM OPI GEL PRODUCTS, INC.

1    stipulation with this Court at that time.  Instead, OPI's inquiries following up on

2    the status of the filing were met with silence for several weeks.

3        On October 16, 2013, CND's counsel contacted OPI's counsel and stated

4    that the filing of the joint stipulation was on hold, CND was in the process of

5    modifying the protective order in the underlying litigation, and asked for another

6    telephone conference to address deposition topics for which there had not yet been

7    a substantive meet and confer.

8        During a telephone conference on October 28, 2013, the parties discussed

9    CND's deposition topics, and CND agreed to send a letter further clarifying its

10   position.  Later that day, CND sent a letter on its position with respect to the

11   deposition topics[7], and formally withdrew its document Request No. 3.  McCauley

12   Declaration, Ex. C.

13       On that same day, CND also sent OPI a copy of the amended protective

14   order in the underlying litigation.  *Id.*  CND had not consulted OPI regarding its

15   amendment to the Protective Order.

16       OPI then informed CND that the amendment to the protective order was not

17   enough to change OPI's position regarding document Request No. 11:

18           The changes to the protective order, however, do not

19           adequately address OPI's concerns with respect to

20           CND's Document Request No. 11 or Topic 10. These

21           concerns include the fact that a protective order is not a

22           substitute for establishing the relevance of or need for the

23           highly sensitive competitive trade secret information

24           requested by Document Request No. 11 and Topic 10,

---

26   [7] The parties are still negotiating the scope of the deposition topics and they are not
27   the subject of this motion.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

7364291-v1                              NTC OF MTN AND MTN TO COMPEL PRODUCTION
                                        OF DOCUMENTS FROM OPI GEL PRODUCTS, INC.

which CND has not done.  In addition, as another
example, the protective order does not address OPI's
concern regarding maintaining the confidentiality of
OPI's highly sensitive business and financial information
in connection with papers filed with the Court or at trial.
As a non-party, OPI would not be present to monitor the
use of its highly confidential information during the
litigation or to participate in or object to the parties' or
the trial court's decisions as to what information should
be kept under seal or restricted to in camera proceedings
in the courtroom.

McCauley Declaration, Ex. D.

On November 7, 2013, CND served its revised joint stipulation regarding CND's renewed motion to compel production in response to document Request No. 11 of its subpoena to OPI.  McCauley Declaration, Ex. F.  Even after having weeks to consider OPI's October 2nd joint stipulation, CND did not provide OPI with any further legal support or argument for the relevance of the requested production to the underlying litigation during the October 28th telephone conference between CND counsel and OPI counsel, or in its letter following up on that call.  Instead, on November 7, CND for the first time presented new arguments for the relevance of such information in its revised joint stipulation section.

**B.    Argument**

While the Federal Rules of Civil Procedure allow broad discovery, a right to discovery is not unlimited.  *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385 (1947).  Discovery may not be had regarding a matter which is not "relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).  Even if relevant, discovery is not permitted where no need is shown, or compliance would be

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1  unduly burdensome, or where harm to the person from whom discovery is sought

2  outweighs the need of the person seeking discovery of the information.  *Micro*

3  *Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990).  The

4  potential for discovery abuse is ever-present, and courts are authorized to limit

5  discovery to that which is proper and warranted in the circumstances of the case.

6  *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir.

7  1993).

8      OPI is not a party to the underlying patent litigation in Northern California.

9  Even case law cited by CND acknowledges that the underlying protections of Rule

10  45 recognize that "the word 'non-party' serves as a constant reminder of the

11  reasons for the limitations that characterize 'third-party' discovery."  *Del Campo v.*

12  *Kennedy*, 236 F.R.D. 454, 458 (N.D. Cal. 2006).  The necessary restrictions on

13  discovery may be broader when a nonparty is the target.  *Dart Indus. Co. v.*

14  *Westwood Chem. Co.,* 649 F.2d 646, 649 (9th Cir.1980); *Collins and Aikman Corp.*

15  *v. J.P. Stevens & Co., Inc.,* 51 F.R.D 219, 221 (D. S.C. 1971)("There appear to be

16  quite strong considerations indicating that discovery would be more limited to

17  protect third parties from harassment, inconvenience, or disclosure of confidential

18  documents.").  Although Rule 26(b) applies equally to discovery of nonparties, the

19  fact of nonparty status may be considered by the court in weighing the burdens

20  imposed in the circumstances.  *Katz*, 984 F.2d at 424 (citations omitted).

21      Where a subpoenaed party meets its initial burden of showing that the

22  requested information is protected as a trade secret or confidential commercial

23  information, the burden shifts to the requesting party to show a "substantial need

24  for the testimony or material that cannot be otherwise met without undue

25  hardship."  Fed. R. Civ. Pro. 45(c)(3)(C)(i); *Aevoe Corp. v. AE Tech Co., Ltd.*,

26  2:12-CV-00053-GMN, 2013 WL 5954570 at *2 (D. Nev. Nov. 6, 2013).

27  "Substantial need" requires a showing that "the requested discovery is relevant and

28  essential to a judicial determination of [the party's] case."  *Aevoe Corp.*, 2013 WL

7364291-v1

NTC OF MTN AND MTN TO COMPEL PRODUCTION
OF DOCUMENTS FROM OPI GEL PRODUCTS, INC.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1  5954570 at *2 (citation omitted).  "The determination of substantial need is

2  particularly important in the context of enforcing a subpoena when discovery of a

3  trade secret or confidential commercial information is sought from non-parties."

4  *Id.* (citing *Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 792, 814 (9th Cir.

5  2003)).

6  **1.  Non-Party OPI Should Not Be Compelled To Produce**

7  **Highly Sensitive Trade Secrets To a Direct Competitor in**

8  **Response to Request No. 11 Because There Is No Relevance**

9  **or Need**

10  CND has been overzealous in the discovery it seeks.  Nevertheless, non-

11  party OPI has agreed to produce a substantial number of documents concerning its

12  purchase of certain Keystone Products, technical information, and promotional and

13  advertising materials in response to CND's document requests as outlined above.

14  *See* Brecht Declaration, Ex. S.  OPI, for example, has agreed to produce summary

15  unit and dollar amounts for certain Keystone Products purchased from Keystone by

16  OPI.  OPI, however, draws the line at CND's document Request No. 11 which

17  seeks information on OPI's sales, costs, gross margins, and customers for OPI's

18  products:

19  Documents sufficient to show OPI's sales to each U.S.

20  customer, including distributors, wholesalers and

21  retailers, of any OPI products that incorporate the

22  Keystone Products purchased by OPI, including units

23  and dollar sales, and cost of goods sold.

24  *Supra* at p. 8.  Thus, CND, a direct competitor to OPI, is seeking access to the

25  identity of each of OPI's U.S. customers, the number of units and dollars of OPI

26  products sold to each of those customers, and OPI's cost of goods sold.  Not

27  surprisingly, none of this trade secret information has been publicly disclosed by

28  OPI, and this type of information has not been publicly disclosed by OPI's

22

NTC OF MTN AND MTN TO COMPEL PRODUCTION
OF DOCUMENTS FROM OPI GEL PRODUCTS, INC.

1   competitors.  Halfacre Decl.¶¶ 3-6.[8]  OPI maintains this information as a trade

2   secret.  *Id.*  None of OPI's confidential sales and profit information is known to

3   Keystone, and thus could not be relevant to any hypothetical negotiation between

4   Keystone and CND, the parties to the underlying patent litigation (explained

5   further below).

6        Each piece of the information CND requests from non-party OPI by its

7   document Request No. 11 is confidential and highly sensitive competitive,

8   customer and financial information of OPI, the disclosure of which to CND or

9   others would be harmful to OPI.  Halfacre Decl. ¶¶ 3-8.   This type of information

10  is generally understood in the cosmetic industry to be especially important to be

11  maintained as secret.  *Id.*  Competitive companies in the cosmetic industry

12  normally do not share this type of sensitive financial and customer information

13  with each other and therefore must compete without knowledge of their

14  competitors' financial status and customers.  *Id.*  As a result, if this information

15  were disclosed, OPI's competitors would have a valuable insight that OPI would

16  not have, giving them a substantial and unfair advantage over OPI.  *Id.* ¶ 7.

17  Disclosure of this OPI highly confidential information to OPI's competitors, others

18  in the cosmetic industry, or the public would allow those competitors to obtain

19  economic value from its disclosure at OPI's expense and cause OPI irreparable

20  commercial competitive harm, by permitting its competitors and potential

21  competitors to use this highly sensitive information to OPI's detriment.  *Id.* ¶ 8.

22       Yet, despite the fact that disclosure of such information to a direct

23  competitor would be harmful to non-party OPI, CND has provided no reasonable

24  _____

25  [8] OPI uses "Halfacre Declaration" to refer to the Declaration of Non-Party OPI's
    William Halfacre in support of Local Rule 37-1 Joint Stipulation Regarding
26  Creative Nail Design Inc.'s Motion to Compel Compliance with Subpoena of Non-
    Party With Respect to Production of Documents.
27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

NTC OF MTN AND MTN TO COMPEL PRODUCTION
                   OF DOCUMENTS FROM OPI GEL PRODUCTS, INC.

1   explanation of the asserted relevancy or need at trial for the information its seeks

2   with document Request No. 11.

3        Unit and dollar sales data are viewed by courts as confidential information.

4   *E.g,. Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 740 (Fed. Cir. 1987).  And

5   courts have presumed that disclosure of confidential sales information to a

6   competitor is more harmful than disclosure to a noncompetitor.  *Id.* (citations

7   omitted).  When a subpoena to a non-party seeks confidential information, and

8   disclosure of that confidential information to a competitor might be harmful, the

9   party seeking discovery must establish that disclosure of the confidential

10  information is relevant and necessary for trial.  *Id.* at 741 ("Where a party seeking

11  a protective order has shown that the information sought is confidential and that its

12  disclosure might be harmful, the burden shifts to the party seeking discovery to

13  establish that disclosure of trade secrets and confidential information is relevant

14  and necessary to its case.")  Even if relevant, such discovery is not permitted where

15  no need is shown, or compliance would be unduly burdensome, or where harm to

16  the person from whom discovery is sought outweighs the need of the person

17  seeking discovery of the information.  *Micro Motion, Inc. v. Kane Steel Co., Inc.*,

18  894 F.2d 1318, 1323 (Fed. Cir. 1990).  In finding that it was an abuse of discretion

19  to order discovery of a non-party's sales volume and customers, the Federal Circuit

20  in *Micro Motion* noted that:

21         In particular, Micro Motion asserted entitlement

22       to discovery of information concerning each

23       competitor's business simply because it may seek to

24       prove lost profits damages.  If this position were correct,

25       a patentee could, in virtually every infringement suit,

26       immediately obtain discovery from all possible

27       competitors by merely filing a complaint asking for

28       damages against one.  And, of course, the alleged

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

24

1  infringer in such case would have the same right.  While

2  we do not suggest that discovery is being used in this

3  case simply to harass a competitor, the possibility for

4  such abuse of discovery is readily apparent.

5  *Id.* at 1324-25.

6  CND's attempts to distinguish *Micro Motion* (*supra* at p. 10) by focusing on

7  the apparent lack of a direct relationship between the non-parties' competing

8  products and the accused infringer party in that case.  However, this difference

9  does not erase the fact that the highly confidential customer, sales, and cost

10  information sought from OPI is wholly irrelevant to a damages claim against

11  Keystone, which is measured by the actions and sales of *Keystone*, not OPI.

12  Furthermore, CND's allegation that other customers of Keystone **who are**

13  **parties in the litigation** have produced their sales and cost of goods information

14  provides no basis to compel OPI, a non-party, to produce such sensitive

15  information, disclosure of which would be harmful to OPI.  Because CND brought

16  those parties into the suit, it is theoretically possible that CND may be able to

17  recover lost profits damages from those parties.  In contrast, OPI is not a party to

18  the litigation, so CND cannot recover any damages from OPI in the underlying

19  litigation making documents about OPI's customer's sales and costs wholly

20  irrelevant to that litigation.

21  CND has failed to demonstrate any relevancy of the requested information to

22  the underlying litigation.  Instead, CND merely reiterates the relative positions of

23  the parties in the supply chain and marketplace, and then baldly asserts that the

24  highly sensitive requested confidential information is "relevant to a calculation of

25  lost profits damages and/or the calculation of a reasonable royalty."  *Supra* at pp.

26  8-9.  But CND does not explain and provides no authority to support its assertion

27  that documents responsive to Request No. 11 are relevant or necessary to the

28  underlying litigation.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

25

Specifically, OPI is not a party to the underlying litigation, so any damages awarded to CND cannot be collected from it. CND has not shown how the requested information regarding OPI's customers and OPI's business and financial information are relevant to or necessary for any reasonable royalties and lost profits it might collect from Keystone, the party that is the accused infringer in the litigation. CND has provided no such authority.

The reason why CND's argument is without merit is rooted in the law of patent infringement damages. In the underlying litigation, CND has asserted that Keystone infringes a patent directed to a method for the application of nail gel products to a fingernail. However, CND admits that Keystone products do not directly compete with CND's nail gel products in the marketplace, stating "CND does not directly compete with Keystone in the marketplace." See above at p. 9. Instead, Keystone sells bulk ingredients to OPI in drums weighing hundreds of pounds, who then uses those ingredients to make nail gel products in small bottles containing less than a fluid ounce. OPI then sells its nail gel products to intermediate distributors, who in turn sell the products to the salons or consumers who actually apply the nail gel to human nails.

CND did not sue OPI, its intermediate distributors, or the salons or consumers who apply the products to human nails. Yet, CND now demands discovery from OPI as if it had sued OPI.[9] This is an abuse of discovery. In the

---

[9] CND's attempts to explain away the fact that it did not include OPI as a party to the underlying litigation "[b]ecause Keystone did not identify OPI . . . as a customer of its Gel Polish products" in its Complaint (*supra* at p. 3). CND, however, cannot contend that, at the time the lawsuit began, it was not aware of OPI's products, or that through discovery in the underlying litigation from Keystone, CND could not have identified early on that OPI was a Keystone customer. Had CND desired to join OPI as a party to the lawsuit, it could have done so.

7364291-v1

NTC OF MTN AND MTN TO COMPEL PRODUCTION
OF DOCUMENTS FROM OPI GEL PRODUCTS, INC.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1   underlying litigation, CND has asserted its claim for patent damages against

2   Keystone.  Accordingly, any appropriate measure of damages is based on the

3   actions and sales of Keystone, the alleged infringer, not OPI who was never sued

4   for patent infringement.

5        CND does not explain, and provides no authority for, the relevance of or

6   necessity for the identity of OPI's customers, OPI's U.S. units and dollar sales on a

7   customer by customer basis, and OPI's cost of goods sold, to the reasonable

8   royalties and lost profits it seeks in the underlying litigation from Keystone.  CND

9   also cites no authority for the proposition that it can measure its alleged damages

10  by any profits it purportedly lost when the alleged infringer, Keystone, does not

11  compete in the same market.  Keystone sells bulk ingredients to nail gel product

12  manufacturers, while CND sells nail gel products.  CND attempts to make up for

13  this fatal deficiency by relying on the fact that Keystone sells bulk ingredients to

14  OPI, among others.  Although CND purports to rely on *Panduit* lost profits case

15  law, it provides no authority that applies a lost profits analysis to a situation where,

16  as here, even CND admits that it "does not directly compete with Keystone in the

17  marketplace."  *Supra* at p. 9.[10]

18       Moreover, even if a Court were inclined to allow a lost profit damages

19  analysis under these circumstances (which it should not do), the highly sensitive

20  documents that CND seeks from OPI are neither necessary nor relevant.  CND

21  provides no justification for seeking OPI's cost of goods sold to any damages

22  analysis against Keystone.  Even with respect to sales data, CND argues only that

23

24  [10] Even if a court were to accept CND's assertions without requiring legal authority

25  for them (which it should not do), CND's broad request for all of OPI's customer
    data and financial information is without justification because OPI's sales include

26  different submarkets than CND.  For example, upon information and belief, CND

27  does not sell any nail gel products for at-home use.

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

7364291-v1                          NTC OF MTN AND MTN TO COMPEL PRODUCTION
                                    OF DOCUMENTS FROM OPI GEL PRODUCTS, INC.

1   "[i]n terms of a *Panduit* lost profits analysis, OPI's sales of its products that

2   incorporate Keystone's infringing products are highly probative evidence of the

3   demand for the patented product,[11] as well as the absence of acceptable

4   noninfringing substitutes." *Supra* at p. 10.  CND, however, already has access to

5   its own sales of its Shellac™ product that is marked[12] with the number of the

6   patent-at-issue in the underlying litigation to argue that there is an alleged "demand

7   for the patented product."  And the presence or "absence of acceptable

8   noninfringing substitutes" is not demonstrated by a customer list or the financial

9   parameters of units or dollars sold, or cost of goods sold.

10          Similarly, CND cites no authority for the proposition that **OPI's** customer

11   and financial information is relevant to a reasonable royalty measure of alleged

12   damages against the alleged infringer, Keystone, in the underlying litigation.  In

13   fact, case law is to the contrary.

14          In patent law, reasonable royalty damages are determined by envisioning a

15   hypothetical negotiation for a license agreement occurring at the time infringement

16   began between the alleged infringer, Keystone, and the alleged patent owner,

17   CND.  *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557 (Fed. Cir.

18   1986) ("The determination of a reasonable royalty, however, is based not on the

19   infringer's profit, but on the royalty to which a willing licensor and a willing

20   licensee would have agreed at the time the infringement began.").  During that

21   hypothetical negotiation, neither CND nor Keystone would have had knowledge of

22   any of OPI's confidential business and financial information (nor do they now).  In

23

24   _____

25   [11] OPI notes that there is no "patented product" at issue in the underlying litigation
     as only method claims are asserted in that case.

26   [12] OPI is without information or knowledge sufficient to take a position on whether
27   CND's marking is accurate.

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

such a situation, it has been deemed "illogical" to measure a reasonable royalty on information that was not known to the parties in the hypothetical negotiation. *Carnegie Mellon Univ. v. Marvell Tech. Group Ltd.*, 2013 WL 5332108, at *49 (W.D. Pa. Sep. 23, 2013) ("*CMU*").

CND's argument that it needs OPI's financial information concerning the proportion of OPI's sales that remain in the United States is a red herring. For example, the Court in *CMU* specifically allowed a determination of reasonable royalty damages to be based on worldwide sales of a component computer chip used in a patented method because, in negotiating a royalty, the manufacturer of the component computer chip accused of infringement and the patent owner would not have known the U.S.-only percentage of sales of the end product made and sold by the chip manufacturer's customers. *Id.* Likewise, here CND and Keystone would never have had such knowledge. Only OPI would. However, as noted above, OPI is not a party to the litigation, and would not have been a party to the hypothetical negotiation.

Moreover, any potential assessment of a reasonable royalty from Keystone would be based upon **Keystone's** sales, not OPI's, and OPI has agreed to produce the summary unit and dollar amounts for each purchase order of Keystone Products purchased by OPI. Governing authority recognizes that parties will often negotiate—for convenience and administrative purposes—a single royalty that will apply across numerous products, even non-infringing products. *See, e.g.*, *Automatic Radio Manuf. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 832-34 (1950); *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1407-09 (Fed. Cir. 1996). *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1372-73 (Fed. Cir. 2010), *cert. denied*, 131 S. Ct. 829 (2010) (expert included infringing and non-infringing products in royalty base "to avoid repeated disputes over what percentage of" products infringe). The Federal Circuit has instructed: "[W]e have never laid down any rigid requirement that damages in all circumstances be limited to specific

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

29

instances of infringement proven with direct evidence. Such a strict requirement could create a hypothetical negotiation far-removed from what parties regularly do during real-world licensing negotiations." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009).

CND argues for the first time in its revised November 7th portion of this joint stipulation that the information it seeks is somehow relevant to *Georgia Pacific* factors 8 and 11. *Supra* at pp. 8-9. The *Georgia Pacific* factors are outlined in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*,31 8 F. Supp. 1116 (S.D.N.Y. 1970) as factors that are relevant to the determination of a reasonable royalty in a hypothetical negotiation at the start of the alleged infringement. *Georgia Pacific* factor 8 concerns an examination of the established profitability of the product made under the patent, its commercial success and its current popularity. This factor, however, has nothing to do with OPI's profits or sales. Any potential assessment of a reasonable royalty to be paid by Keystone would be based upon Keystone's sales and profitability, not OPI's. During the hypothetical negotiation between Keystone and CND, Keystone would neither know, nor care, about how much profit its downstream customers were making. Therefore, OPI's profitability would not be relevant to this *Georgia Pacific* factor. Similarly, to the extent the commercial success of any product might influence Keystone's determination of what royalty rate was reasonable for it to pay, it would look to its own products, not those of its customers.[13]

---

[13] CND also raises commercial success as an objective indicia for non-obviousness for the first time. *Supra* at fn. 3. However. the issue of commercial success requires that the success of the products at issue be due to the merits of the claimed invention. CND has failed to carry its burden of showing some relationship between the alleged invention of the patent-in-suit and OPI's confidential financial, sales and customer data. *Mannington Mills, Inc. v. Armstrong World Industries, Inc.*, 206 F.R.D. 525, 532, (D. Del. 2002).

(continued...)

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1    CND's reliance on *Georgia Pacific* factor 11 is similarly misplaced.

2    *Georgia Pacific* factor 11 concerns "the extent to which the infringer has made use

3    of the invention and the value of such use." CND has sued Keystone, not OPI, for

4    infringement. Thus, it is the accused infringer Keystone's use of the alleged

5    invention and the value of that use which is relevant to the reasonable royalty

6    analysis, not OPI's. And OPI has agreed to produce to CND documents sufficient

7    to show summary unit and dollar amounts of the accused Keystone Products

8    purchased by OPI.

9         For these reasons, CND has failed to establish the relevance and need for

10   information which, if disclosed to its direct competitors, is no doubt harmful to

11   OPI.

12        **2.     CND Has Not Addressed OPI's Valid Concerns Regarding**

13                 **the Protective Order**

14        OPI had asked CND's counsel to further discuss its protective order

15   concerns. Brecht Declaration, Ex. S at p. 3 ("Many of the documents referred to

16   above contain Highly Confidential information that would need to be treated on an

17   Outside Counsel Eyes Only basis. In addition, it is not clear to me what outside

18   counsel and/or experts would have access to information produced by OPI in the

19   underlying litigation. Please let me know when you would be available to discuss

20   these protective order concerns with me further."). CND never responded to this

21   request. Instead, CND, without consulting with or involving OPI, proceeded to

22   amend the definition of "Highly Confidential" in the Protective Order. Brecht

23   Declaration at Ex. U.

24   _____

25   (continued)

26

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1     CND unilaterally dismisses OPI's concerns regarding production of OPI's

2  confidential and highly sensitive business and financial information. CND asserts

3  that "OPI's objection based on the proprietary nature of the requested documents is

4  an improper basis for withholding production," and contends that the recently

5  amended protective order in the underlying litigation eliminates any basis for

6  OPI's objections. *Supra* at pp. 11-12.

7     A protective order, however, is not a substitute for establishing relevance or

8  need (which, as explained above, CND has not done). *Micro Motion*, 894 F.2d at

9  1325. Moreover, non-disclosure of OPI's highly confidential information is not

10  assured even under the current protective order in the underlying litigation.[14]

11     As recent events in the legal news have demonstrated, protective order

12  violations do occur, even in the most high profile cases with billions of dollars at

13  stake. The risk of improper disclosure is far from remote even if a protective order

14  is in place. For example, last week the Northern District of California issued an

15  Order to Show Cause in response to "the serious charge that Samsung [a party to

16  the litigation] . . . and their attorneys violated this court's protective order, perhaps

17  hundreds of times," resulting in the both the "pervasive distribution of [sensitive

18

19     [14] CND originally issued the subpoena that is the subject of this dispute on July
20  10, 2013 to OPI without Keystone's permission. OPI's counsel was informed that
   the subpoena contained Highly Confidential Keystone item number information,
21  without the appropriate "HIGHLY CONFIDENTIAL-ATTORNEYS EYES'
   ONLY" legend. At Keystone's request, CND subsequently revoked that subpoena
22  and reissued a substitute one with the appropriate protective order legend.
   Similarly, CND did not apply a protective order legend to its later correspondence
23  which contained those confidential Keystone item numbers. McCauley
   Declaration, Ex. C. CND's inattentive handling of documents containing Highly
24  Confidential Keystone information and its disregard of OPI's valid concerns
25  regarding the confidentiality of its information further support the legitimacy of
   OPI's concern.
26

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

32

1    business information of the opposing party in the litigation] to Samsung employees

2    who were not authorized to have access to it," and the wrongful use of the

3    improperly disclosed sensitive business information.  McCauley Declaration at Ex.

4    E, November 8, 2013 Order to Show Cause Why Sanctions Are Not Warranted in

5    the *Apple Inc. v Samsung Electronics Co. Ltd. et al*, Case No. 5:11-cv-01846 LHK

6    (PSG) at p. 3.  The Court found that violations of the protective order had, in fact,

7    occurred, and is now determining the extent of sanctions that should issue.  *Id.*

8         Here, OPI is not a party to the underlying litigation, nor does it necessarily

9    have interests that are wholly aligned with the parties or others having access to

10   produced information.  CND, Cacee, Inc., Young Nails, Inc. and Nail Systems

11   International, named parties to the underlying litigation, are all direct competitors

12   to OPI.  Halfacre Decl. ¶ 9.  None of the parties to the litigation has a strong

13   incentive to defend OPI's interests should questions concerning or breaches of the

14   confidentiality of OPI's highly sensitive business and financial information arise in

15   connection with the conduct of depositions, papers filed with the Northern District

16   of California court, or during the trial.  OPI would have no knowledge or control

17   over the use (or misuse) of its highly confidential material by, for example, counsel

18   to the parties or their unidentified experts in the underlying litigation.

19        Moreover, the protective order, even as recently amended, does not prevent

20   the use of OPI information stamped "Highly Confidential" from public disclosure.

21   For example, the Stipulated Protective Order states that  "this Stipulated Protective

22   Order does not entitle [the parties] to file confidential information under seal; Civil

23   Local Rule 79-5 and General Order 62 set forth the procedures that must be

24   followed and the standards that will be applied when a party seeks permission from

25   the Court to file material under seal."  Brecht Declaration Ex. T at p. 2.  OPI would

26   not be present to monitor the use of its highly confidential information in pre-trial

27   proceedings or to participate in or object to the parties' or trial court's decisions as

28   to what part of the trial should be conducted *in camera*.  Once produced, OPI

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

33

1  would lose control over its highly confidential customer, sales and costs

2  information to a proceeding to which it is not a party.  Thus, there remains a great

3  risk of harm to OPI from disclosure of its confidential business and financial

4  information despite the presence of a protective order in the underlying litigation

5  **C.    Conclusion**

6      For the foregoing reasons, OPI respectfully urges this Court to deny CND's

7  motion compelling OPI to produce the documents requested in CND's Request No.

8  11.

9

10  Dated:  November 18, 2013          VENABLE LLP

11                                    By:  /s/ Celeste M. Brecht

                                          Celeste M. Brecht
12

13                                    Attorneys for Creative Nail
                                      Design Inc.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

7364291-v1                            NTC OF MTN AND MTN TO COMPEL PRODUCTION
                                      OF DOCUMENTS FROM OPI GEL PRODUCTS, INC.

Dated: November 18, 2013

By:

  /s/ *Robert F. McCauley*
**FINNEGAN, HENDERSON,**
**FARABOW, GARRETT & DUNNER,**
**LLP**
Robert F. McCauley (SBN #162056)
robert.mccauley@finnegan.com
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203
Telephone: (650) 849-6600
Facsmile: (650) 849-6666

Michael C. Elmer (SBN #60366)
michael.elmer@finnegan.com
2 Overlook Drive
Newport Beach, CA 92657
Tel: (949) 715-5263
Fax: (650) 849-6666

Attorneys for Non-Party
OPI Products, Inc.

Linda A. Wadler*
Sulay D. Jhaveri (SBN #262442)
linda.wadler@finnegan.com
sulay.jhaveri@finnegan.com
901 New York Avenue, N.W.
Washington, DC 20001
Tel: (202) 408-4000
Fax: (202) 408-4400

*Pro Hac Vice Application To Be Filed
Upon Assignment of Case Number*

Of Counsel for Non-Party
OPI Products, Inc.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

35

NTC OF MTN AND MTN TO COMPEL PRODUCTION
OF DOCUMENTS FROM OPI GEL PRODUCTS, INC.

1

2

**OPI'S CONTENTIONS**
**PROOF OF SERVICE**

3

4

STATE OF CALIFORNIA   )
                       ) ss.

5

COUNTY OF LOS ANGELES )

6

   I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action;  my business address is Venable LLP, 2049 Century Park East, Suite 2100, Los Angeles, California.

7

8

On November 18, 2013, I served a copy ☑ / original ☐ of the foregoing document(s) described as **CREATIVE NAIL DESIGN INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM OPI PRODUCTS, INC.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; LOCAL RULE 37-1 JOINT STIPULATION IN SUPPORT THEREOF** on the interested parties in this action addressed as follows

9

10

11

12

13

14

**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
Robert F. McCauley
robert.mccauley@finnegan.com
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203

Attorneys for Non-Party
OPI PRODUCTS, Inc..

15

16

17

18

19

20

Linda A. Wadler
linda.wadler@finnegan.com
901 New York Avenue, N.W.
Washington, DC 20001

21

22

23

24

25

☑     By placing true copies thereof enclosed in a sealed envelope(s) addressed as stated above.

26

☑     **BY MAIL (FRCP 5(b)(1)(C))**:  I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the U.S. Postal Service.  Under that practice such envelope(s) is deposited with the U.S. postal service on the same day this declaration was executed, with postage thereon fully prepaid at 2049 Century

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

7364291-v1

NTC OF MTN AND MTN TO COMPEL PRODUCTION
OF DOCUMENTS FROM OPI GEL PRODUCTS, INC.

1    Park East, Suite 2100, Los Angeles, California, in the ordinary course
     of business.

2    ☐    **BY PERSONAL SERVICE (FRCP 5(b)(1)(B)(i)):**  I caused to be
          delivered such envelope(s) by hand to the addressee(s) as stated
3         above.

4    I declare that I am employed in the office of a member of the Bar of this Court at
     whose direction the service was made.  I declare under penalty of perjury under the
5    laws of the United States of America that the above is true and correct.

6    Executed on November 18, 2013, at Los Angeles, California.

7

8    _____
                Jan Contreras
9

10

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

37

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Manuel L. Real_____ and the assigned Magistrate Judge is _____Frederick F. Mumm_____ .

The case number on all documents filed with the Court should read as follows:

## 2:13CV8534 R FFMx

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

Clerk, U. S. District Court

_____November 19, 2013_____          By  _J.Prado_____
Date                                              Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| [x] Western Division<br>312 N. Spring Street, G-8<br>Los Angeles, CA 90012 | [ ] Southern Division<br>411 West Fourth St., Ste 1053<br>Santa Ana, CA 92701 | [ ] Eastern Division<br>3470 Twelfth Street, Room 134<br>Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

CV-18  (08/13)                    NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

COURTESY
COPIES

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
IN RE SUBPOENA OF OPI-PRODUCTS, INC.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)
Celeste M. Brecht (SNB 238604)
VENABLE LLP
2049 Century Park East, Suite 2100, Los Angeles, CA 90067
Ph: (310) 229-9900; Fax: (310) 229-9901
Email: cmbrecht@venable.com

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☒ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No      ☐ **MONEY DEMANDED IN COMPLAINT:** $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Fed. R. Civ. P. 37

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☒ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property |  | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** |  | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **TORTS** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation |  | ☐ 310 Airplane | **PERSONAL PROPERTY** | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | **BANKRUPTCY** |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
|  | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
|  |  |  | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
|  |  |  | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
|  |  |  | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number:   CV13-8534

CV-71 (09/13)                               CIVIL COVER SHEET                               Page 1 of 3

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIM. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | **A PLAINTIFF?** Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?** Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes  ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.I. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Western Division |

American LegalNet, Inc.
www.FormsWorkFlow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CIVIL COVER SHEET

**IX(a). IDENTICAL CASES**: Has this action been previously filed in this court and dismissed, remanded or closed? ☒ NO ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Have any cases been previously filed in this court that are related to the present case? ☒ NO ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** /s/ Celeste M. Brecht _____ DATE: November 18, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

American LegalNet, Inc.
www.FormsWorkFlow.com